# Hodder *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Charge of court—Inadequacy of charge.*

In an action against a street railway company for personal injuries, where the plaintiff testifies that she was injured by the sudden starting of a car when she was attempting to alight from it, while at rest, and her evidence is directly contradicted by the conductor, motorman and four passengers, all of whom had equal opportunity with the plaintiff to know what the actual fact was, the numerical inequality in the support given one side and the other by the witnesses, is a proper subject of judicial comment and to minimize the effect of such inequality so as to make what is said on the subject prejudicial and misleading is reversible error.

Argued Jan. 9, 1907. Appeal, No. 210, Jan. T., 1906, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1904, No. 2,712, on verdict for plaintiff in case of Augusta C. Hodder v. Philadelphia Rapid Transit Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McMICHAEL, J.

The material portion of the charge of the court was as follows:

Now then, gentlemen, you are to decide from the evidence, applying to it the rules which govern you in the ordinary affairs of life, whether or not this lady stepped from a moving car, or, as one of the witnesses said, jumped from a moving car; or whether, having notified the conductor to stop the car, he gave the bell to stop the car, and the car having stopped, she then attempted to alight and the car was started forward before she got off and she was thrown from the car. Counsel, with great clearness and great fairness to each other and to us, have put that question before you, and that is a fact for you to decide.

I shall say very little about the testimony of the witnesses, That is for you. You should reconcile it if you can; if not,

you must decide between the witnesses. On the one hand, it has been argued from the circumstances of the case that the lady's story is hardly credible, but you have a right to believe it, and, if you believe it, to determine that the company was, through its employees, guilty of carelessness in that having stopped the car to give her an opportunity to alight, they did not give her time enough to alight. But if you believe the testimony of the defendant's witnesses and believe she stepped or jumped from a moving car, she is guilty of contributory negligence. Of course the credibility of witnesses is for you. You should look a witness straight in the face, and you twelve men are to decide whether you believe or do not believe the witnesses. You heard the plaintiff, you heard her examined and cross-examined, and you have doubtless by this time come to a conclusion as to whether her recollection is accurate or whether her story is to be believed. And so as to the witnesses for the defendant. They are more numerous in number and agree pretty well that the lady stepped or jumped off the car while it was in motion, but when they come to describe the accident, it is for you to say whether you think their story holds together. I am not going into a disquisition on evidence, but where witnesses come in and tell exactly the same story to the letter, it is rather thought to be against their credibility than for it. That is, if people make up a story, they are apt to make it up exact in all the details. But I do not want to take up time on that. I want to get right at this case. You have got to decide, as these witnesses said this woman either jumped off the car or stepped off the car while it was in motion, whether their story is accurate or not, and first of all applying to her and her witnesses your careful consideration, critical consideration, do the same thing to the witnesses for the defendant. Because they seem to agree in this, that the lady jumped or stepped off the car while it was in motion, but you can test their accuracy by the testimony. The witness Southcott, who testified quite fully about it, when asked where he sat, was not quite sure of the seat but was back in the smoking seats, he thought it was the second from the back and on the same side, as I understood his testimony, though that is for you, as the lady was on, and he said there were two empty seats between him and the lady. We will pass over Smith and Meredith, the conduc-

tor and motorman. They testified simply and directly. The motorman was not cross-examined. But you may test their testimony. Then we come to the testimony of the witness Siglang. Siglang first said that he was on the left side of the car, and then said he was on the right-hand side. That may have been a slip of the tongue or the memory. And the other witness, Carlin, also said, "I was on the east side; that is on the same side as the lady that I saw." Now, you have got to test the accuracy of the recollection of those witnesses by their accuracy and by the way they stood cross-examination, because, while they did say—and one of the witnesses not having stated how the lady got off, in answer to a question, said she jumped off with both feet. The other witnesses described her getting off in a rather different way. I am not arguing this case; I am simply putting to you the testimony of these witnesses. It is not always numbers, but it is whom the jury believe. However, I have called your attention first of all to the testimony of the plaintiff. Counsel for the defendant was accurate in his statement, that though the testimony of a witness who is interested is no longer excluded by the law, the jury must take into consideration the great interest she has in the case. At the same time, you heard her examined and cross-examined and you must determine whether her story was true and accurate, because her right to recover from this defendant company depends on the accuracy of her statement that the car had stopped and while she was in the act of alighting started forward suddenly and threw her down. And so you should apply the same critical analysis and care to the testimony of the defendant. They are both entitled to it. It has been well and fairly presented by counsel on both sides. There has been no attempt to either move your sympathy or to stir your indignation or to excuse anything. Your business in that jury box is not to decide for this lady because you sympathize with her, or against the company because you have any prejudice against it, but to determine the facts, and if you determine that her story is accurate and true and that the others are mistaken, you have a right to do it and to decide in favor of the plaintiff. That is the foundation of our government.

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Error assigned* was that " the learned court erred in that the charge as a whole was not a fair and adequate presentation of the case."

*Thomas Leaming*, with him *Chester N. Farr, Jr.*, for appellant.—When the charge complained of was delivered, the situation called for great care, for the testimony stood thus:

### PLAINTIFF'S EVIDENCE.

Herself, alone. Interested, incompetent until legislation made her otherwise, her evidence ought to be weighed with much caution, especially when it was wholly without corroboration and was flatly contradicted by every eye witness, which fact the court should have explained to the jury.

### DEFENDANT'S EVIDENCE.

1. Southcott, a passenger, swore she got up after the car crossed Filbert street, the conductor pulled the bell and instead of waiting for the car to stop, she stepped off while it was in motion, fifteen or eighteen feet above the crossing.

2. Smith, conductor, testified he saw the plaintiff get up, whereupon he rang the bell, calling to her to wait until the car stopped, but she stepped off before it had done so.

3. Meredith, motorman, swore his attention was attracted by hearing the conductor call " wait until the car stops," whereupon he looked back and saw plaintiff had fallen and that there had been no stop before.

4. Carlin, a passenger, deposed that plaintiff got up as though excited and got off while the car was moving, about three yards above the crossing.

5. Sigland, a passenger, saw the plaintiff stand up and motion to the conductor as the car passed over the crossing and then get off before the car stopped.

6. McDonald, a passenger, saw plaintiff rise, step down on the running board and thence to the street, backward, before the car had stopped.

The charge was inadequate: Lingle v. Scranton Ry. Co., 214 Pa. 500.

*Haines D. Albright*, with him *Henry B. Tawresey*, for appellee.—Where the testimony is neither complex nor volumin-

ous, particular reference to it is unnecessary : Schmidt v. Mc-Gill, 120 Pa. 405.

The weight of evidence is not a question of mathematics, but depends on its effect in inducing belief: Braunschweiger v. Waits, 179 Pa. 47.

It is not reversible error for the court to omit special instructions which have not been prayed for : Standen v. Penna. R. R. Co., 214 Pa. 189.

Opinion by Mr. Justice Stewart, February 25, 1907 :

It is complained in the assignment of error that the charge of the court was not a fair and adequate presentation of the case upon the facts. That it was a very full and entirely correct exposition of the law applicable to the case itself is conceded. It does not concern us to inquire whether the verdict was in accordance with the facts or otherwise, but the assignment of error puts upon us the duty of inquiring whether the jury, in reaching its conclusion, was properly and sufficiently aided by the court in the presentation and discussion of the evidence. The plaintiff was injured in the attempt to alight from the car of the defendant company, and the action was for the recovery of damages. The negligence charged was the sudden starting of the car from a state of rest while plaintiff was in the act of getting off, with the result that she was thrown upon the ground and injured. The case presented this marked feature, that while but one witness, and that the plaintiff herself, testified to the particular fact relied upon to establish negligence, viz. : that the car was at rest when plaintiff attempted to alight, the conductor, motorman and four passengers, all of whom witnessed the occurrence, testified, in direct and positive contradiction to the plaintiff, that when she attempted to alight the car was moving, that it had not then reached the crossing, and that it had not stopped at all. Did the case present no other feature than this marked numerical inequality in the support given one side and the other by the witnesses, this of itself would be a circumstance properly calling for remark in the general charge, and the least the court could do would be to instruct the jury to allow it due weight. By so much the greater reason should it be the subject of observation and instruction when, as in this case, the solitary

witness on the one side is the plaintiff herself testifying in her own behalf, unsupported by a single fact or circumstance not equally supporting those testifying adversely to her, and on the other side a half dozen witnesses, each with equal opportunity with the plaintiff to know what the actual fact was, testifying without impeachment of credibility by witness or circumstance, in positive contradiction to the plaintiff's statement. Here was a state of evidence which not only invited comment by the court, but required it, in order that what was so unusual might have neither too much nor too little influence in determining the conclusion of the jury, but strictly its proper weight. In deciding the question of defendant's liability the jury had but one fact to ascertain—was the car at rest or in movement when plaintiff attempted to alight? The answer to this question depended on where they rested their belief—in the plaintiff's testimony or that of the opposing witnesses. The complaint is not that the feature of the case referred to was overlooked in the charge, but that in remarking upon it the learned trial judge not only failed to allow it the prominence and force it was entitled to, but so minimized its effect as to make what was said on the subject, if not a positive misdirection, a prejudicial misleading. The charge contains but two references to this pronounced inequality, both so brief that their insertion here will add but little to the length of this opinion. The first is : "And so as to the witnesses for the defendant, they are more in number, and agreed pretty well," etc. The next is : "It is not always numbers but whom the jury believe." Since the only question was, as the court correctly put it, whom they should believe on the disputed point, the impression left on the minds of the jurors by these brief references to the disparity of the number of witnesses testifying on the one side and the other to the vital fact of the case, would most likely be that it was a circumstance too unimportant for fuller reference, and therefore too unimportant for their serious consideration. Had the learned judge said so in so many words, it would have been manifest error, because it would have denied the defendant the benefit of an advantage it had a right to claim on the state of the evidence as exhibited. That it was differently expressed is immaterial, if as expressed it was calculated to produce the same effect.

The case, for the reasons referred to, called for full and explicit instructions as to the weight of the evidence, as to what is meant by this expression, and what instructions should influence in determining where the weight of evidence lay. The charge would have been open to exception had it by implication even allowed the jury to suppose that it was necessarily determined by numbers; the error was none the less decided if by implication it left the jury free to disregard, or treat as unimportant, the fact that the issue of credibility was between one interested party and half a dozen others, four of whom, so far as the evidence disclosed, stood clear of all bias, and all of whom had equal opportunity with the one to know the truth. What was impressed on the minds of the jury with an earnestness out of proportion to the requirements of the case, was their right to accept the testimony of plaintiff rather than that of the opposing witnesses. We say out of proportion to the requirements because this right was unchallenged, and nothing called for such a vindication of it by the court as it received. This is the language of the charge : " Your business is not to decide for this lady because you sympathize with her, or against the company because you have any prejudice against it, but to determine the facts, and if you determine that her story is accurate and true, and that the others are mistaken, you have a right to do it and to decide in favor of the plaintiff. That is the foundation of our government." It may be that the collective intelligence of the jury prevailed to avoid misunderstanding what was here said, but we cannot be made certain of it. It would not be at all strange if the less intelligent and discriminating of the jurors derived from it the notion that their acceptance of plaintiff's testimony as true would relieve them of a responsibility, which otherwise would be theirs, of exposing to serious danger our civil institutions. It was in marked contrast to the earlier references made to the testimony of defendant's witnesses. Not only was the effect of the marked numerical preponderance there unduly minimized, but the testimony was not reviewed with that accuracy of statement required for careful investigation by the jury. As to whether the car was in motion or at rest, when the plaintiff attempted to alight, the only question in the case, these witness were in entire and absolute accord; there was ·

some uncertainty as to the seats occupied in the car by each, and some slight discrepancy with respect to some other wholly unimportant details ; but on the one fact to be inquired about their agreement was positive and exact. The reference to this testimony was as follows : " They (the defendant's witnesses) are more numerous and agree pretty well that the lady stepped or jumped off the car while it was in motion, but when they come to describe the accident, it is for you to say whether you think their story holds together." This was an unwarranted depreciation of the testimony of these witnesses, to say the least. It was not a case where explanation and reconcilement were required to show agreement, but where concurrence was so pronounced and exact that no refinement could make of it anything less than unanimity. Such characterization of the testimony was inaccurate and unfair, because calculated to rob it of its true significance. Nor was the effect at all corrected by what was said as to the individual witnesses testifying for the defendant, but rather intensified. Reference to the testimony of each was made, only, however, to point out those things which the learned judge thought proper to consider as testing their accuracy. Matters thus indicated for the jury's consideration were unrelated to the one important fact. However found to be, they could not qualify in the slightest the witnesses' opportunities to see how the fact was, nor could they furnish any reasonable basis for discrediting the testimony. One witness spoke of the plaintiff jumping off the car, while all the others described it as a stepping off ; another could not be certain whether he was two seats in the rear of the plaintiff or three, and another immediately corrected his statement that he was on the left-hand side of the car. These are the features of the testimony specifically pointed out by the court to enable the jury to test the accuracy of their testimony. To say that a jury may reject the testimony of a half dozen witnesses for no other reason than here appears, is simply to invite them to do so. The testimony of the conductor and motorman was in accord with that of the other witnesses. The only reference to it was as follows : " We will pass over Smith and Meredith, the conductor and motorman. They testified simply and directly." An omission of all reference to the testimony of these two witnesses would have been marked, but its effect

would not have been so prejudicial to the defendant as the reference that was made. Why pass over them ? The inference that the jury would be likely to derive from such a remark would be that because the witnesseses were employees of the defendant company their testimony need not be seriously considered, and yet it bore as directly upon the one fact in issue as that of the other witnesses, and was in entire accord with it. Of course, the court intended no such inference to be drawn, but the jury would be most likely to accept it as the obvious one.

It is unnecessary to illustrate further. We have sufficiently indicated wherein the charge comes short of being a fair and impartial résumé of the evidence. Any review of the evidence by the court that is inaccurate in statement, or that gives such undue prominence to minor considerations as to divert the attention of the jury from the material questions in the case, and deprives either side of an advantage it is entitled to under the rules of evidence, is in effect misleading. That is what is complained of in respect to the charge in this case ; and what we have indicated shows, we think, that the complaint is not without reason. It was not a fair and adequate presentation of the case, and the assignment of error must be sustained.

Judgment reversed and venire facias de novo awarded.